**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**FLINT DIVISION**

| | |
|---|---|
| ERIC B. MAYS, <br><br> Plaintiff, <br><br> vs. <br><br> LADEL LEWIS, EVA WORTHING, and CHIEF TERENCE GREEN, in their official and individual capacities, the CITY OF FLINT, MICHIGAN, and the FLINT POLICE DEPARTMENT, <br><br> Defendants. | Hon. _____ <br><br> Civil Action No.: _____ <br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

*This action alleges, inter alia, violations of the First Amendment, Fourth Amendment, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, as well as violation of the Michigan Open Meetings Act, MCLS § 15.261, et seq., by members of the City Council of the City of Flint, Michigan and the Flint Police Department, infringing upon the rights of Plaintiff as arising under those aforesaid bodies of law.*

Plaintiff, ERIC B. MAYS, by and through his attorneys, Lento Law Group, P.C., and by way of Complaint, brings this action for damages and other legal and equitable relief against Defendants LADEL LEWIS, EVA WORTHING, and CHIEF TERENCE GREEN, in their official and individual capacities, the CITY OF FLINT, MICHIGAN, and the FLINT POLICE DEPARTMENT (collectively, "Defendants"), alleging as follows:

**INTRODUCTION**

1.     The City Council of the City of Flint, Michigan has gained nation-wide recognition, but unfortunately, not in a positive way.

2.     A wealth of video segments from various Council meetings have gone viral online on social media – predominately on YouTube, Facebook, and TikTok – due largely to the complete and utter chaos that unfolds at nearly every Council meeting.

3.     The Flint City Council has become notorious for its inequal application of Council rules, personality conflicts which impede City business, and the sheer frequency with which Council meetings descend into a circus-like spectacle.

4.     A great deal of the chaos which frequently ensues at Flint City Council meetings is due, in no small part, to the arbitrary, capricious, vindictive, spiteful, unprofessional, and utterly dictatorial manner in which Flint City Councilwoman, Defendant LADEL LEWIS, chairs the meetings, given that she, as Council Vice-President, is the ranking Councilmember given that the Council is presently without a President.

5.     During the Flint City Council meeting of October 23, 2023, however, Defendant Lewis's unabashed disregard for the rule of law reached a disturbingly new low in that she – in tandem with her cohort Councilwoman Defendant EVA WORTHING – trampled upon the free speech rights of a fellow Councilmember, Plaintiff, ERIC B. MAYS, ordering Defendant FLINT POLICE DEPARTMENT, namely Defendant CHIEF TERENCE GREEN and his officers to unlawfully and forcibly remove

Plaintiff from an ongoing Council meeting, despite Plaintiff having down nothing at all to warrant said removal.

## JURISDICTION AND VENUE

6.    This is an action for damages against the Defendants, who at all times, were acting under color of State law, and in vindication of Plaintiff's civil rights secured by 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Michigan Open Meetings Act, MCLS § 15.261, *et seq.*, and the First Amendment to the United States Constitution.

7.    This Court has original subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343.

8.    This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to the constitutional claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

9.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants reside in this district and the events giving rise to Plaintiff's claims as complained of herein occurred within this district.

## PARTIES

10.    At all times relevant hereto, Plaintiff ERIC B. MAYS, is an adult resident citizen of the County of Genesee, State of Michigan, with a residential address of 125 E. Russell Avenue, Flint, Michigan 48505.

11.    At all times relevant hereto, Defendant LADEL LEWIS is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with

a residential address for service of process believed to be 4024 Winona Street, Flint, Michigan 48504. Said Defendant is sued in both her official and individual capacity.

12.    At all times relevant hereto, Defendant EVA WORTHING is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, with a residential address for service of process believed to be 1001 E. Hemphill Road, Flint, Michigan 48507. Said Defendant is sued in both her official and individual capacity.

13.    At all times relevant hereto, Defendant CHIEF TERENCE GREEN is, upon information and belief, an adult resident citizen of the County of Genesee, State of Michigan, servable at the Flint Police Department located at 210 E. 5th Street, Flint, Michigan 48502. Said Defendant is sued in both his official and individual capacity.

14.    At all times relevant hereto, Defendant CITY OF FLINT, MICHIGAN (hereinafter, "Flint" or the "City") is a chartered municipal corporation per MCL 117.1, which pursuant to MCL 6000.2051, has the capacity to sue or be sued, and is servable at the Flint City Hall, Legal Department, 1101 Saginaw Street, 3rd Floor, Flint, Michigan 48502.

15.    At all times relevant hereto, Defendant FLINT POLICE DEPARTMENT, is a department and/or agency within the City of Flint government, operating under the command of Defendant Chief Terence Green, and located at 210 E. 5th Street, Flint, Michigan 48502.

**GENERAL ALLEGATIONS**

16.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

17.     On October 23, 2023, Plaintiff, ERIC B. MAYS (hereinafter, "Plaintiff" or "Councilman Mays"), was present at the Flint City Council meeting occurring that evening, performing the functions he was duly-elected to perform as the Flint City Councilman representing the 1st Ward of the City.

18.     It is important to note that the Flint City Council meetings are commonly recorded by members of the public in attendance, who record with all manner of electronic videotaping equipment: camera, camcorders, camera-phones, etc., as well as by the City of Flint itself, and thus, much, if not all, of the events referenced in this Complaint are publicly viewable online on YouTube.

19.     For the Court's edification, timecodes to this[1] YouTube recording will be included periodically throughout this Complaint.

20.     Following preliminary business, resolution separations, and public comment, the substantive portion of the meeting began contentiously as, following discussion from Councilman Mays, Defendant LADEL LEWIS (hereinafter, "Defendant Lewis") quickly chastised Councilman Mays's remarks as not germane to the discussion at hand.

21.     This particular critique from Defendant Lewis is one she often directs towards Councilman Mays, and seemingly only Councilman Mays, despite the other

---

[1] https://www.youtube.com/watch?v=TY_kX2gPfuo

Councilmembers regularly taking conversational digressions from the main topic of the moment.

22. This was an early example in the course of the meeting of the selective, arbitrary, and unequal application of Defendant Lewis's powers as Chair of the meeting to stifle and/or punish a fellow Councilmember, in this case, Councilman Mays. (*See*, n.1 at approx. 1:41:55).

23. Following several defects in procedure by Defendant Lewis, Councilman Mays calls points of order to express his concern with Defendant Lewis's failures to properly Chair.

24. Defendant Lewis denies Councilman Mays's point of order and Mays subsequently appeals the decision of the Chair.

25. Arbitrarily, and seemingly out of frustration that Councilman Mays's is attempting to call out her blatant disregard for procedure, Defendant Lewis vindictively rules Councilman Mays out of order and gives him his "first warning". (*See*, n.1 at approx. 1:56:18).

26. In an attempt to return to the business at hand, Councilman Mays asks Defendant Lewis "We are we at?", referring to the meeting agenda.

27. Despite obviously knowing what Councilman Mays was referring to, Defendant Lewis cockily retorts, "The Council Chambers". (*See*, n.1 at approx. 1:57:10).

28. This is precisely the type of remark that, had it been made by Councilman Mays, or perhaps Councilwomen Tonya Burns or Jerri Winfrey-Carter, whom

Defendant Lewis also openly disfavors, would have resulted in a warning; however, at no time did Defendant Lewis warn herself.

29.     In response to Defendant Lewis's tyrannical charging of the meeting thus far, and the inability to proceed with Council business that was resulting from such disregard for Council rules, Councilwoman Winfrey-Carter proceeded to make a motion to remove Defendant Lewis as Chair for both meetings taking place that day: the Council Meeting and the Special Affairs Subcommittee Meeting. (*See*, n.1 at approx. 2:10:00).

30.     During discussion on the Motion to Remove Defendant Lewis as Chair for the day's meetings, Defendant Lewis became argumentative with Councilwoman Burns, causing several other Councilmembers to leave their seats in apparent frustration.

31.     This resulted in Defendant Lewis quickly taking the opportunity to adjourn the meeting for lack of a quorum, thus precluding Councilwoman Winfrey-Carter's Motion to Remove Defendant Lewis as Chair from being ruled on. (*See*, n.1 at approx. 2:50:00).

32.     During the recess which ensued, and demonstrative of Defendant Lewis's willingness to abridge individual's rights as arising under the First Amendment to the Untied States Constitution, at one point, a member of the public who had been filming the day's proceedings approaches the now-empty Council bench to record the goings-on in the room.

33.     At the same time, Defendant Lewis happens to cross in front of him, and the individual records her as she passes.

34.     Immediately, Defendant Lewis becomes hostile with the young man, repeatedly and aggressively asking, "Why are you filming me? Why are you following me around filming me?"  (*See*, n.1 at approx. 2:53:40).

35.     This is despite the fact that the Flint City Council meetings are open public meetings under the Michigan Open Meetings Act – as will be discussed at more length later in this Complaint – and despite the fact that *many* individuals regularly record at the meetings.

36.     Defendant Lewis's hostility towards the young man prompted the young man to become defensive and as their back and forth escalated in volume, chaos erupted in the room as Flint Police Officer Metcalfe (who regularly is the officer in attendance at Flint City Council meetings) and others intervened to attempt to deescalate the altercation.

37.     Eventually, the Council reconvened to begin the Special Affairs Committee meeting, also headed by Defendant Lewis.

38.     During consideration of a particular resolution, Councilman Mays called a point of information for clarification, to which Defendant Lewis put her hand up at Mays, and said, "Please hold."

39.     Councilman Mays then called a point of order and reminded Defendant Lewis that a point of information takes priority and it was improper for Defendant Lewis to not ask him to state his point. (*See*, n.1 at approx. 4:50:50).

40.    Shortly thereafter, concerning the business at hand, Councilman Mays then proceeded to ask Councilman Dennis Pfeifer, via a point of information, for the page number of the particular resolution he had just been referring to a moment prior.

41.    Councilman Pfeifer responded with the page number, and thinking out loud to himself, Councilman Mays says, "Oh, on the Council agenda on page six," to which Defendant Lewis cockily retorts, "Yes, we're in a Council meeting." (*See*, n.1 at approx. 4:51:25).

42.    In response, Councilman Mays remarks that Defendant Lewis's conduct was nasty and uncalled for, and in response, Defendant Lewis vindictively rules Councilman Mays out of order and issues him a warning. (*See*, n.1 at approx. 4:52:00).

43.    Councilman Mays immediately proceeds to appeal Defendant Lewis's warning, and rather than asking if there is a second to the motion as is procedurally appropriate, Defendant Lewis continues her monologue against Councilman Mays.

44.    Frustrated, Councilman Mays then calls a point of order saying, "Your job is to ask if there's a second. I'm tired of you."

45.    In response, Defendant Lewis once against responds cockily, saying, "Well, go to sleep." (*See*, n.1 at approx. 4:52:19).

46.    During discussion on the appeal, Councilman Pfeifer, who clearly saw the inequity with which Defendant Lewis was making her various rulings against Councilman Mays, pointed out to Defendant Lewis her clear disregard for inappropriate comments from Councilwoman Defendant EVA WORTHING

(hereinafter, "Defendant Worthing") and for also not minding her own language and behavior. (*See*, n.1 at approx. 4:59:02).

47.   During her discussion time, Councilwoman Burns also proceeded to appropriately scold Defendant Lewis for her inappropriate conduct as Chair, reminding her, "You have dumpster fire meetings, it's a fact. You have a problem with at least four of your colleagues? That's a huge amount as a Chair." (*See*, n.1 at approx. 5:02:12).

48.   Fed up with Defendant Lewis's inability to chair fairly, during her discussion time, Councilwoman Winfrey-Carter tries again to course correct, stating, "I'm going to try to nip this once again," and again proceeds to make a Motion to Remove Defendant Lewis as the Chair of the meeting. (*See*, n.1 at approx. 5:03:00).

49.   Following a digression about the appropriateness of a Motion made during an appeal, Councilman Pfeifer calls a point of order to ask Defendant Lewis whether there will be discussion on the Motion as such a Motion would typically have discussion.

50.   Defendant Lewis responds, "No we're not," which draws immediate points of order from Councilman Mays and others as Defendant Lewis's conduct was clearly procedurally inappropriate. (*See*, n.1 at approx. 5:09:00).

51.   Rather than proceeding with the discussion on the Motion to remove her, Defendant Lewis instead hastily orders a five (5) minute recess. (*See*, n.1 at approx. 5:10:05).

52.     Immediately Councilman Mays objects that the recess is inappropriate, and Councilman Pfeifer adds that Defendant Lewis did not have the floor to make such an order for a recess.

53.     Following some back and forth from Councilman Mays and Defendant Lewis regarding her lack of regard for the rules, Defendant Lewis again rules Councilman Mays out of order and issues him his second warning. (*See*, n.1 at approx. 5:25:25).

54.     Shortly thereafter, Defendant Lewis gives Councilman Mays another warning following another attempt by Mays to correct Lewis's procedural missteps via points of order. (*See*, n.1 at approx. 5:34:40).

55.     Despite the ease with which Defendant Lewis issues warnings to Councilman Mays, at one point, Defendant Lewis surprisingly (and perhaps as a result of having been specifically called out earlier by Councilman Pfeifer for overlooking misconduct by Defendant Worthing) proceeds to rule Defendant Worthing out of order, but does not issue her a warning. (*See*, n.1 at approx. 5:37:44).

56.     As a result, Councilman Mays calls a point of order to inquire as to why Defendant Lewis ruled Defendant Worthing out of order but declined to issue her a warning as she readily issues such warnings for him.

57.     Defendant Lewis denies the point of order and Councilman Mays appeals.

58.     As the meeting continued to descend into further chaos, Councilwoman Burns proceeds to call out Defendant Worthing for stating that she wants to break quorum so as to adjourn the meeting.

59.    As a result, Defendant Worthing proceeds to mock Councilwoman Burns, comparing her to a school girl coming to a teacher to complain about a fellow student.

60.    Councilwoman Burns asks Defendant Lewis whether she will warn Defendant Worthing, but, unsurprisingly, she does not. (*See*, n.1 at approx. 5:40:30).

61.    As a result of the blatant inequality and favoritism with which Defendant Lewis chairs, Councilman Mays makes a point of order and reinforces to Lewis that she should be issuing Defendant Worthing a warning.

62.    After Councilman Burns similarly voices concern about the inequal treatment, Defendant Lewis begrudgingly issues Defendant Worthing a warning.

63.    Immediately, Councilman Mays calls a point of order to address with Defendant Lewis whether it is actually Defendant Worthing's first or second warning, and rather than addressing Councilman Mays's very valid point, Defendant Lewis invokes the Disorderly Persons City Code Subsection to remove Councilman Mays from the meeting.

64.    Councilman Mays indicated that he wished to appeal this ruling of Defendant Lewis, however, she did not entertain the appeal.

65.    Councilwoman Worthing immediately proceeded to leave her seat and call the police from her cell phone, specifically, and upon information and belief, Defendant CHIEF TERENCE GREEN (hereinafter, "Defendant Chief Green") of Defendant FLINT POLICE DEPARTMENT (hereinafter, "Flint PD").

66.    Immediately after ordering Councilman Mays removed, Defendant Lewis called a five (5) minute recess, seemingly in an attempt to facilitate law enforcement's

response to the scene to unjustly remove Councilman Mays. (*See*, n.1 at approx. 4:44:34).

67.     Shortly thereafter, law enforcement officers of Defendant Flint PD did, in fact, arrive in the City Council Chambers, whereupon numerous uniformed officers escorted Councilman Mays out of the City Council Chambers, and further, out of City Hall entirely.

**COUNT I**
**INFRINGEMENT ON FREEDOMS OF SPEECH & ACCESS**
**FIRST & FOURTEENTH AMENDMENT**
**As to Defendant Ladel Lewis**
**(42 U.S.C. § 1983)**

68.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

69.     The First Amendment to the United States Constitution provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

70.     As incorporated to the States through the Fourteenth Amendment, the First Amendment provides protection to, and opportunity for, free speech in public forums and the freedom to access said forums.

71.     For example, it is well-settled that the First Amendment guarantees the right of public access to criminal trials. *See*, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555,575-80 (1980); *see also*, Somberg v. Cooper, 582 F.Supp.3d 438, 443 (E.D. Mich. Jan. 26, 2022).

72.    "The First Amendment's right to access criminal proceedings has been expanded to several other proceedings outside of the criminal-judicial context." Somberg, supra. at 443; *see also*, Detroit Free Press v. Ashcroft, 303 F.3d 681, 695 (6th Cir. 2002).

73.    For matters outside of the trial phases of criminal proceedings, many cases have consistently applied the two-part "experience and logic" test articulated in Richmond Newspapers, supra., and its subsequent line of cases. *See, e.g.*, Press-Enter. II, 478 U.S. at 13 (preliminary hearings); Press-Enter. I, 464 U.S. at 501-04, (voir dire examination and juror selection); United States v. Simone, 14 F.3d 833, 842 (3d Cir. 1994) (post-trial examination of juror for potential misconduct); United States v. Smith, 787 F.2d 111, 116 (3d Cir. 1986) (transcripts of sidebars or chambers conferences concerning evidentiary rulings); United States v. Criden, 675 F.2d 550, 554 (3d Cir. 1982) (pretrial suppression, due process and entrapment hearings).

74.    The Sixth Circuit, in Detroit Free Press v. Ashcroft, explains, "The Richmond Newspapers two-part test has also been applied to particular proceedings outside the criminal judicial context, including administrative proceedings." supra, at 695.

75.    Even further, the Sixth Circuit, opined, "[W]e believe that there is a limited First Amendment right of access to certain aspects of the executive and legislative branches." Id.

76.    Regarding the first prong of the two-part test laid out in Richmond Newspapers – "experience" – the Sixth Circuit explained that, "[T]he case for a right of access has

special force when drawn from an enduring and vital tradition of public entree to particular proceedings or information." Id. at 589.

77.     Put another way, because a "tradition of accessibility implies the favorable judgment of experience," Globe Newspaper, 457 U.S. at 605 (quoting Richmond Newspapers, supra. at 589) [the Court must] consider . . . whether the place and process have historically been open to the press and general public." Press-Enter. II, 478 U.S. at 8.

78.     With this first prong in mind, the "place and process" at issue here is the Flint City Council, specifically, the General Council Meeting & Special Affairs Committee Meeting of October 23, 2023.

79.     Such Flint City Council meetings have traditionally been open to the public, and in fact, such openness is mandated by the City's Charter, specifically, Sec. 1-404, and by the Michigan Open Meetings Act, 1976 PA 267, MCL 15.261 et seq.

80.     Further, as a Councilman on the Flint City Council, Plaintiff has not only a right to be present, but a obligation, so as to facilitate his performance of the duties which he was duly-elected to perform.

81.     Thus, both historical precedent and the laws unpinning such precedent, weigh in Plaintiff's favor with regard to the "experience" prong of the Richmond Newspaper two-part test.

82.     With regards to the second prong – "logic" – this prong asks, "whether public access plays a significant positive role in the functioning of the particular process in question." Press-Enter. II, 478 U.S. at 8-9.

83.     As the Sixth Circuit explained in <u>Detroit Free Press v. Ashcroft</u>, "public access acts as a check on the actions of [the public body] by assuring us that proceedings are conducted fairly and properly... [and] Second, openness ensures that government does its job properly; that it does not make mistakes." supra, at 703-704.

84.     Underlying the right of access, is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." <u>Globe Newspaper Co. v. Superior Court for Norfolk Cnty</u>., 457 U.S. 596, 604-05, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982).

85.     Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process." <u>Id.</u> at 606.

86.     With these principles in mind, while not acting in his private capacity as a member of the public during the meeting in question, the ability of Plaintiff to access the public forum in his official role, clearly serves a significant positive role in the Council's functioning in that, throughout, Plaintiff regularly subjects his fellow Councilmembers, and specifically as relevant herein, Defendant Lewis, to public scrutiny so as to ensure that the discussion of government affairs which takes place at these meetings can be a fair and informed one.

87.     Arguably, as a member of the Flint City Council himself, Plaintiff has a duty to so keep his fellow Councilmembers in check, as do they to him and each other, in a reciprocal and respectful process intended to advance the public interest.

88. Thus, it appears clear that Plaintiff's access to the Flint City Council meeting of October 23, 2023, served a significant positive role in the Council's functioning for the foregoing reasons, weighing in Plaintiff's favor with regard to the "logic" prong of the Richmond Newspaper two-part test.

89. Thus, having satisfied both prongs of the Richmond Newspaper two-part test, a First Amendment right of access attaches to the Flint City Council meetings, with regards to Plaintiff's right to be present.

90. Even so, admittedly, the right of access is not absolute.

91. Utilizing the Richmond Newspaper logic-experience test, the Sixth Circuit made clear that, the right which attaches where the access sought has "historically been open to the press and general public... and public access plays a significant positive role in the functioning of the particular process in question" is a *qualified* right". United States v. Miami Univ., 294 F.3d 797, 821 (6th Cir. 2002).

92. To the extent that Plaintiff's right to attend the Flint City Council meeting may be construed as a speech right, rather than an access right, the foregoing principle that such a right is a qualified right is consistent with the principle that the government can impose, time, place, and manner restrictions on free speech.

93. Even so, those time, place, and manner restrictions, like restrictions on the qualified right to access, must nonetheless be "narrowly tailored to serve a significant governmental interest." Lexington H-L Servs. v. Lexington-Fayette Urban Cty. Gov't, 879 F.3d 224, 228 (6th Cir. 2018) (as to time, place, and manner restrictions); *see also*, Somberg, supra. at 444, and Eu v. San Francisco Cnty. Democratic Cent. Comm., 489

U.S. 214, 109 S. Ct. 1013, 103 L.Ed. 2d. 271 (1989) (as to access restrictions) ("The right to access, like many aspects of the First Amendment, is not absolute. For a state action for survive a First Amendment challenge, the enforced regulation must be narrowly tailored to advance a compelling state interest.")

94.    The action taken against Plaintiff in this matter – his arbitrary and retaliatory expulsion from the Flint City Council meeting of October 23, 2023 – neither advanced nor served a significant or compelling governmental interest, nor was Plaintiff's expulsion from said public meeting narrowly tailored.

95.    The compelling governmental interest implicated by the facts at hand would be the continued business of the Flint City Council meeting.

96.    Plaintiff's expulsion from the meeting did not advance this compelling governmental interest because it was not, in fact, the Plaintiff whose conduct was impeding the progression of the meeting, but rather, Defendant Lewis's poor and preferential chairing – a fact that was repeatedly brought to her attention during the course of the meeting by Plaintiff and several other of their colleagues on the Council.

97.    Plaintiff's expulsion, therefore, cannot be said to have advanced the functioning of the Council, as all it did was enable the Council meeting to continue precariously on, without Plaintiff's critical role as a check on the arbitrary, unfair, procedurally improper, and a blatantly tyrannical rule of Defendant Lewis as Chair.

98.    Additionally, the expulsion of Plaintiff cannot be said to have been narrowly tailored in that there were less restrictive means available to accomplish the same goal.

99.   If we assume *arguendo* that the reason Defendant Lewis ordered Plaintiff be removed from the meeting was truly because he was causing a disturbance – a contention that Plaintiff certainly does not concede; in fact, to the contrary, as it is Plaintiff's position that his frequent interjections with points of order and points of information as necessary – then even in this circumstance, the removal of Plaintiff was still not the least restrictive means of the resolving the situation.

100.   As Plaintiff's points of order and points of information – the apparent source of Defendant Lewis's growing frustration throughout the meeting – were often called by Plaintiff only in response to Defendant Lewis's own procedural misconduct or inequal application of the Council rules, a less restrictive means of resolving that situation would have been simply for Defendant Lewis to refrain from engaging in the procedurally inappropriate conduct and chair the meeting fairly and appropriately, thus negating the need for Plaintiff's frequent, but necessary interjections.

101.   Alternatively, an additional less restrictive means would have simply been for Defendant Lewis to issue Plaintiff another warning, as unjustified as it may have been.

102.   Despite these less restrictive methods of curtailing Plaintiff's interjections, Defendant Lewis nonetheless unilaterally expelled Plaintiff from the meeting entirely.

103.   Therefore, the expulsion of Plaintiff from the October 23, 2023, Flint City Council meeting, by Defendant Lewis, in spite of countervailing legal precedent as cited herein, and in spite of the important governmental function Plaintiff's presence

furthered, neither advanced a compelling governmental interest, nor was narrowly tailored in its scope.

104.    Rather, the facts, and particularly the video footage of the event, make clear that the Defendant Lewis's action was nothing more than a retaliatory, arbitrary, capricious, vindictive, despotic, and needlessly restrictive attack on Plaintiff's First Amendment rights, as aforesaid.

**COUNT II**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**As to Defendants Ladel Lewis & Eva Worthing**
**(42 U.S.C. § 1985)**

105.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

106.    As the Sixth Circuit opined in <u>Taylor v. Streicher</u>, 465 Fed. Appx. 414, 419 (6th Cir. 2012), the elements of a claim arising under 42 U.S.C. § 1985 are, "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." (quoting, <u>White v. Trapp</u>, 93 F. Appx. 23, 26 (6th Cir. 2004)).

107.    A plaintiff making a claim under 42 U.S.C. § 1985 must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." <u>Bartell v. Lohiser</u>, 215 F.3d 550, 559-60 (6th Cir. 2000).

108.   Defendant Lewis infringed upon Plaintiff's First Amendment rights to free speech and to free access of a public meeting, as alleged more thoroughly in the previous Count.

109.   At all times relevant hereto, the Defendant Worthing conspired with Defendant Lewis so as to deprive Plaintiff of the equal protection of the laws, specifically, Plaintiff's rights as arising under the First Amendment, as alleged more completely in Count I herein, and which Plaintiff specifically incorporates in its entirety by reference.

110.   The Defendants named in this Count acted in furtherance of that conspiracy via a coordinated effort to have police needlessly and unjustly remove Plaintiff from the open public meeting.

111.   More specifically, immediately after invoking the Disorderly Persons City Code Subsection to remove Plaintiff, Defendant Worthing proceeded to call police, and upon information and belief, specifically, Defendant Chief Green.

112.   With no genuine basis for doing so, and solely to facilitate Defendant Worthing's call for police and their response to the scene, Defendant Lewis called for a recess of the meeting so as to not allow Council business to continue until after Plaintiff was physically removed from the meeting.

113.   By coordinating in this manner, these Defendants deprived Plaintiff of his rights as arising under the First Amendment, and as articulated more fully in Count I herein.

114.    Upon information and belief, even despite Defendant Lewis being African American herself, the Defendants' conduct was discriminatorily motived, at least in part, by Plaintiff's race and sex as an African American male.

115.    Thus, the Defendants have violated 42 U.S.C. § 1985, causing Plaintiff to suffer an unjust deprivation of his constitutional rights as arising under the First Amendment.

**COUNT III**
**NEGLIGENCE *PER SE***
**VIOLATIONS OF THE MICHIGAN OPEN MEETINGS ACT**
**As to Defendants Ladel Lewis, Eva Worthing, & Chief Terence Green**
**(MCLS § 15.261, *et seq.*)**

116.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

117.    MCL §15.263(5) of the OMA, provides, in pertinent part, as follows:

> A person must be permitted to address a meeting of a public body under rules established and recorded by the public body.

118.    While the OMA does not define the term "person", the word is so commonly used in Michigan statutes that the Legislature has seen fit to standardize its use.

119.    To that end, MCL 8.3 provides that "[i]n the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature."

120.    Importantly, MCL 8.3l explicitly provides that the word "person" may "extend and be applied to bodies politic and corporate, as well as to individuals."

121.    Thus, applying both MCL 8.3 and MCL 8.3l, the term "person" as used in the Open Meetings Act, must be deemed to refer to all "individuals" regardless of capacity

– official or personal – and apply equally to both members of the public and members of a public body.

122. Councilman Mays, therefore, is certainly "a person" within the meaning of MCL §15.263(5), both in his individual and official capacities, and there is nothing in the OMA to indicate that he is not such a person as the aforesaid section applies to.

123. Thus, under OMA, Councilman Mays must be permitted to address a meeting of a public body – as relevant here, the Flint City Council, of which he is a member – subject only to the "rules established and recorded by the public body".

124. This is consistent with MCL 15.263(6), which provides:

> A person must not be excluded from a meeting otherwise open to the public *except for a breach of the peace actually committed at the meeting.*
>
> (Emphasis added)

125. As the basis for Plaintiff's removal, Defendant Lewis invoked the Disorderly Person City Code Subsection, which provides:

> Any person that persists in disrupting this meeting will be in violation of the Flint City Code Section 31-10, Disorderly Conduct, Assault and Battery, and Disorderly Persons, and will be subject to arrest for a misdemeanor. Any person who prevents the peaceful and orderly conduct of any meeting will be given one warning. If they persist in disrupting the meeting, that individual will be subject to arrest. Violators shall be removed from meetings.

126. As the Michigan 1st District Court of Appeals made clear in <u>RPF Oil CO. v. Genesee Cty.</u>, 330 Mich. App. 533, 538-9 (2019):

> State law may preempt a local government's law either through a direct conflict or through "occupying the field of regulation which the municipality seeks to enter." Thus, an

ordinance is preempted if it is "in direct conflict with the state statutory scheme"… [L]ocal governments may regulate matters of local concern only in a manner and to the degree that their regulations do not conflict with state law. A local regulation directly conflicts with a state statute if the regulation "permits what the statute prohibits or prohibits what the statute permits."

(Internal citations omitted)

127.   The Disorderly Person City Code Subsection, specifically, in the manner in which is being utilized by Defendant Lewis – as a justification for removing members of the public from an open public meeting – conflicts with MCL 15.263(6) in that it permits what MCL 15.263(6) prohibits; in other words, the Disorderly Person City Code Subsection permits the exclusion of members of the public from an open public meeting for grounds other than solely "a breach of the peace actually committed at the meeting," as provided for in MCL 15.263(6).

128.   The Disorderly Person City Code Subsection is therefore in direct conflict with MCL 15.263(6) and is thus preempted by same.

129.   Given this, regarding the sole basis under MCL 15.263(6) upon which an individual may be excluded from an open public meeting – "a breach of the peace actually committed at the meeting," – importantly, "a breach of the peace" is not defined within the body of the MI OMA.

130.   The definition of "a breach of the peace" under the MI OMA was an issue directly addressed at length by an unpublished opinion out of the Michigan 1st District Court of Appeals, Cusumano v. Dunn, 2020 Mich. App. LEXIS 5652, a full copy of which is annexed hereto as **EXHIBIT "A"**.

131.    The appellate court in <u>Cusumano</u> looked to numerous other Michigan state court cases throughout time which sought to define a "breach of the peace", for example, *inter alia*:

    **a.**  <u>People v. Bartz</u>, 53 Mich. 493, 495 (1884); <u>Davis v. Burgess</u>, 54 Mich. 514 (1884); and <u>People v. Loveridge</u>, 75 Mich. 488, 491-494 (1889), which together "indicate that the kind of conduct that constitutes a 'breach of the peace' includes abusive vile, and excessive acts that are grossly inconsistent with civil conduct acceptable in the community." <u>Cusumano</u>, supra. at 12;

    **b.**  <u>Yerkes v. Smith</u>, 157 Mich. 557, 560 (1909), in which the Michigan Supreme Court stated that, "there can be no breach of the peace within the meaning of the law that does not embrace some sort of violent as well as dangerous conduct";

    **c.**  <u>Regents of Univ. of Mich. V. Washtenaw Co. Coalition Against Apartheid</u>, 97 Mich. App. 532 (1980), which found a breach of the peace in connection with "confrontational conduct which required physical and forceful expulsion by law enforcement officials"; and

    **d.**  <u>City of Owosso v. Pouillon</u>, 254 Mich. App. 210, 220 (2002), a case involving a defendant who made "grotesquely exaggerated speech when he publicly spoke out against abortion while standing on city property near a dentist's office and a church where mothers were dropping off their children for daycare and preschool," and nonetheless, the Court of

Appeals concluded that, "such conduct had no tendency to incite an imminent breach of the peace".

132.   In summarizing its analysis of the definitions of "breach of the peace" from the aforementioned cases and others, the Court of Appeals in <u>Cusumano</u> opined that:

> All of these cases indicate that a "breach of the peace" constitutes seriously disruptive conduct involving abusive, disorderly, dangerous, aggressive, or provocative speech and behavior tending to threaten or incite violence. These cases clarify that under Michigan law a "breach of the peace" goes well beyond behavior acceptable in civil society.

133.   Given these prior interpretations of a "breach of the peace" in the context of the MI OMA, it is clear that Plaintiff's conduct – namely, frustrating Defendant Lewis by calling frequent, yet necessary, points of order (as is his right as a Councilman) – was not speech that was seriously disruptive, nor did Plaintiff manifest behavior in any manner which was threatening, nor did he incite violence, nor did Plaintiff require physical and forceful expulsion by law enforcement (he was escorted by several officers, but he did not resist and went peaceably), and nor did Plaintiff's conduct go "well beyond behavior acceptable in civil society".

134.   In sum, Plaintiff's conduct as alleged herein simply was not of the type, caliber, nature, or quality, that could justly be called a "breach of the peace"; rather, it was conduct which was merely inconvenient or annoying to Defendant Lewis.

135.   As such, as MCL 15.263(6) only permits the exclusion of persons from a meeting otherwise open to the public for a "breach of the peace actually committed at the meeting," in so removing Plaintiff despite his conduct not rising to the level of a

"breach of the peace" as that phrase has come to be defined by Michigan courts, Defendants Lewis, Worthing, and Chief Green have violated MCL 15.263(6).

**COUNT IV**
**UNLAWFUL SEIZURE**
**FOURTH & FOURTEENTH AMENDMENT**
**As to Defendants Chief Terence Green and Flint Police Department**

136.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

137.   To make a prima facie claim for unlawful seizure, a plaintiff must show that (1) seizure of the person occurred, and (2) that said seizure was unlawful.

138.   A Fourth Amendment "seizure" occurs when there is "governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989).

139.   Given the facts of this mater as previously stated herein, it is undeniable that Plaintiff was, in fact, "seized" by Defendant Chief Terence Green and other officers of Defendant Flint Police Department, in that these governmental actors, acting under color of law, intentionally terminated Plaintiff's freedom of movement within the Flint City Council Chamber, and thereafter, within the City Hall building as a whole.

140.   Further, this seizure of Plaintiff by said Defendants was unlawful as articulated more fully in Count III, which Plaintiff herein incorporates by reference, but in short, because Plaintiff's seizure and removal were in violation of the Michigan Open Meetings Act, specifically, MCL 15.263(5) & (6).

141.   Thus, Defendant Chief Green and Defendant Flint Police Department perpetrated an unlawful seizure upon Plaintiff in violation of his rights as arising under the Fourth Amendment to the United States Constitution.

**COUNT V**
**MUNICIPAL LIABILITY – *Monell Claim***
**UNCONSTITUTIONAL ORDINANCE**
**(42 U.S.C. § 1983)**
**As to Defendant City of Flint, Michigan**

142.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

143.   A municipality such as Defendant City of Flint, Michigan ("Flint" or the "City") may be found liable where an unconstitutional ordinance forms the basis for a plaintiff's claim.

144.   As stated earlier in Count III, which Plaintiff incorporates herein by reference, the City's Disorderly Person City Code Subsection which Defendant Lewis invoked to remove Plaintiff from the subject Flint City Council meeting of October 23, 2023, is unconstitutional.

145.   This is because said Subsection conflicts with MCL 15.263(6) in that it permits what MCL 15.263(6) prohibits; in other words, the Disorderly Person City Code Subsection permits the exclusion of members of the public from an open public meeting for grounds other than solely "a breach of the peace actually committed at the meeting," as provided for in MCL 15.263(6).

146.   For being in direct conflict with MCL 15.263(6), the Disorderly Person City Code Subsection is therefore preempted by same, and is thus – as it was enforced as

against Plaintiff – an unconstitutional abridgment of Plaintiff's First Amendment rights as aforesaid.

147.   The Disorderly Person City Code Subsection, as an unconstitutional ordinance, is a legislative product of the City of Flint, and thus, said municipal Defendant, must be liable for harm to Plaintiff said unconstitutional ordinance has occasioned.

**COUNT VI**
**MUNICIPAL LIABILITY – _Monell Claim_**
**UNCONSTITUTIONAL CUSTOM**
**(42 U.S.C. § 1983)**
**As to Defendant City of Flint, Michigan**

148.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully stated herein.

149.   Alternatively to Count V, a municipality such as Defendant City of Flint, Michigan ("Flint" or the "City") may be found liable for a constitutional violation even where a city ordinance is facially valid, provided that a plaintiff can evidence an official custom of the municipality, showing the existence of a practice that is so widespread and well-settled that it constitutes a standard operating procedure of the municipality.

150.   A single action by a lower-level employee of the municipality generally does not suffice to show an official custom.

151.   Assuming _arguendo_, that the Disorderly Person City Code Subsection is facially valid, Defendant City of Flint, Michigan – namely through Defendant Ladel Lewis – has nonetheless engaged in an unlawful pattern and practice of behavior, so well-settled and so widespread as to have the force of law.

152.    More specifically, even if the Disorderly Person City Code Subsection is facially valid, the practice of Defendant Ladel Lewis – as Vice-President of the Flint City Council, Chair of the Special Affairs Committee, and thus as an agent of the City of Flint – of regularly invoking the Subsection in a flippant, arbitrary, capricious, spiteful, vindictive, or retaliatory nature, when such an action is not warranted, is a violation of the First Amendment rights of every individual upon whom said Subsection was unjustly invoked, and served as the basis for their removal from an open public meeting.

153.    In fact, Defendant Lewis has previously invoked the Disorderly Person City Code Subsection against Plaintiff himself, as well as against numerous other individuals; for example, Flint resident Beverly Biggs-Leavy who was unjustly removed by Defendant Lewis pursuant to the aforesaid Subsection on August 14, 2023, and Flint resident Kamryn Randle who was also unjustly removed by Lewis pursuant to said Subsection on June 5, 2023.

154.    Again, to the extent that the Disorderly Person City Code Subsection is facially valid, which Plaintiff certainly does not concede, Defendant City of Flint, Michigan, through its agent, Defendant Lewis as Vice-President of the Flint City Council and Chairwoman of the Special Affairs Committee, has repeatedly enforced said Subsection in an unconstitutionally arbitrary and capricious manner, so much so as to constitute a custom or usage with the force of law.

155.    Thus, the City of Flint, Michigan must be liable for the harm to Plaintiff said unconstitutional custom or usage occasioned on the date of the subject occurrence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ERIC B. MAYS, demands judgment against the Defendants, LADEL LEWIS, EVA WORTHING, and CHIEF TERENCE GREEN, in their official and individual capacities, the CITY OF FLINT, MICHIGAN, and the FLINT POLICE DEPARTMENT, for the following damages:

1) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, punitive, and exemplary damages, with interest;

2) Reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. 1988, and

3) For such other further relief as the Court may deem equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: <u>October 25, 2023</u>

JOHN A. FERNANDEZ, ESQUIRE
MI State Bar No. P68029
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
The Ferris Wheel
615 Saginaw Street
Flint, MI 48502
T: (810) 962-8200 | F: (810) 962-8201
jafernandez@lentolawgroup.com
*Attorney for Plaintiff*

**LENTO LAW GROUP, P.C.**

Dated: <u>October 25, 2023</u>

JOSEPH CANNIZZO JR., ESQUIRE
AL State Bar No. 3584O57X
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
Chase Corporate Center
1 Chase Corporate Center, Suite 400
Birmingham, AL, 35244
T: (385) 485-0600 | F: (313) 992-1122
jcannizzo@lentolawgroup.com
*Attorney for Plaintiff*


**LENTO LAW GROUP, P.C.**

Dated: <u>October 25, 2023</u>

LAWRENCE A. KATZ, ESQUIRE
NJ State Bar No. 027051988
(*Admitted in the E.D. of Michigan*)
LENTO LAW GROUP, P.C.
3000 Atrium Way, Suite 200
Mt. Laurel, NJ 08054
T: (856) 652-2000 | F: (856) 375-1010
lakatz@lentolawgroup.com
*Attorney for Plaintiff*