UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC B. MAYS,　　　　　　　　　　　　　　Case No. 23-12705

　　　Plaintiff,　　　　　　　　　　　　　　　　F. Kay Behm
v.　　　　　　　　　　　　　　　　　　　　　United States District Judge

CITY OF FLINT via the Flint City Council
and the Flint Police Department,

　　　Defendants.
_____ /

**OPINION AND ORDER GRANTING MOTION TO DISMISS (ECF No. 37)**

I.　　**PROCEDURAL HISTORY**

Plaintiff, Eric Mays, filed this lawsuit on October 25, 2023 against Ladel Lewis, Eva Worthing, Chief Terence Green, the City of Flint, and the Flint Police Department. (ECF No. 1). He filed a second amended complaint on November 21, 2023. (ECF No. 7). On December 6, 2023, Mays filed an emergency motion for temporary restraining order to bar the Council from suspending Mays. It was heard and denied by presiding Judge Matthew Leitman the same date. (ECF Nos. 14, 18). Mays filed a second such emergency motion on December 22, 2023, which was heard and denied on January 11, 2024, on the grounds that "[t]he city charter . . . grants the Council the authority to set its own rules of procedure and to punish its members for misconduct," and that the legal ground asserted by

1

Mays "has no likelihood of success on the merits." (ECF No. 27, PageID.433).[1] On January 26, 2024, the parties stipulated to allow Mays to file the Third Amended Complaint (ECF No. 31) ("TAC"), removing as parties the individual defendants and suing only the City of Flint via the Flint City Council and the Flint Police Department. Defendant filed a motion to dismiss the TAC, which is fully briefed. (ECF Nos. 37, 44, 45).[2] The court held a hearing on October 9, 2024.

For the reasons set forth below, the court **GRANTS** the motion to dismiss the Third-Amended Complaint.

## II.    FACTUAL BACKGROUND

Mays was a member of the Flint City Council. (ECF No. 31, ¶ 18). Former Defendants Eva Worthing and Ladel Lewis are also councilmembers. (*Id*. at ¶¶ 5, 21). Former Defendant Terence Green is the Chief of the Flint Police Department. (ECF No. 31, ¶ 16). The Flint City Council and Police Department are agencies of the City of Flint. (*Id*. at ¶¶ 15-16). Mays attended the Council meetings on October 23, November 2, November 8, November 13, and December 20, 2023.

---

[1] More specifically, the court found that Mays's claims were barred by legislative immunity. (ECF No. 27). Legislative immunity applies to local legislators sued in their individual capacity, but not in their official capacity. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 218-219 (6th Cir. 2011).

[2] Defendant initially argued that the complaint should be dismissed based on the political question doctrine, but withdrew that argument in the reply. (ECF No. 45, p. 1, n. 1).

(ECF No. 31, ¶¶ 18, 74, 103 and 157). Former Defendant Lewis was the Council chairperson (*Id*. at ¶ 4).

The Flint City Charter empowers the City Council to enact ordinances "to provide a permanent rule for the conduct of government," to "determine its own rules of procedure… [and] punish its own members for misconduct." (ECF No. 37-8, Flint City Charter, §§ 3-301 and 3-103(b)). Section 3-104 of the Charter provides that "City Council members are expected to conduct themselves with appropriate decorum, [and] act respectfully with constituents, each other, and other public servants . . .". *Id*. The City Council Rules, in the preamble to § 27, give the Chairperson to exclusive authority to maintain order and to rule on "who/what is in or out of order." (ECF No. 37-9). Under Flint City Ordinance § 31-10, disturbing the orderly conduct of a public meeting after being once informed is a misdemeanor. (ECF No. 37-10).

During the October 23, 2023 meeting, Chairperson Lewis ruled Mays out of order and gave him a warning (ECF No. 31, ¶ 26); ruled Mays out of order a second time and gave him a warning (*Id*. at ¶ 43); ruled Mays out of order a third time and gave him a third warning (referred to as a second warning at *Id*. at ¶ 54); issued Mays a fourth warning (*Id*. at ¶ 55); ruled Councilwoman Worthing out of order then issued her a warning (*Id*. at ¶¶ 56, 63); and finally invoked the Disorderly Persons rule to order Mays removed from the meeting (*Id*. at ¶ 64).

3

Mays was then escorted from the meeting by the Flint Police Department, (Id. at ¶ 68). (ECF NO. 37-2, Exhibit 1A at 2:58 - 6:4516).

During the November 2, 2023 meeting, there was debate over whether the necessary quorum was present and an appeal of whether a recess was proper (ECF No. 31, ¶¶ 79-96). Mays unsuccessfully appealed Chairperson Lewis' ruling that the recess was proper. (*Id*. at ¶¶ 88-96). Mays voiced that the "meeting was unlawful" and consequently Lewis ruled Mays had violated the Disorderly Persons rule. (*Id*. at ¶¶ 96-97). Lewis ordered Mays removed and he was peaceably removed by the Flint Police. (*Id*. at ¶ 251). The videotape of this meeting reflects Mays seated on the floor in front of the council bench protesting the meeting for several minutes prior to his removal. (ECF No. 37-3, Exhibit 1B at 10:00 - 12:17).

During the meeting on November 8, 2023, Chairperson Lewis issued Mays his first warning for breach of decorum (ECF No. 31, ¶ 104); Mays attempted to have Chairperson Lewis and others ruled out of order, (*Id*. at ¶¶ 102-103; 105-120); Lewis issued Mays a second warning, which Mays appealed; (*Id*. at ¶¶ 121-122); Lewis issued Councilman Mushatt a warning (*Id*. at ¶ 128); Lewis indicated Mays was out of order and issued a third warning and ordered Mays removed (Id. at ¶¶ 138-40); Lewis decided to retract prior warnings and issue a new warning to

4

Mays as first warning (*Id*. at ¶ 144).  After a vote on Mays' appeal of an earlier warning failed to reverse Chairperson Lewis' decision to warn Mays (*Id*. at ¶¶ 145-146), Lewis ordered Mays removed from the meeting (*Id*. at ¶ 147).  Mays was "removed" (*Id*. at ¶ 251), however, the video record shows the meeting adjourned following the order that Mays be removed.  (ECF No. 37-4, Exhibit 1C at 1:30-4:45; 28:45-34:36).

During the meeting on November 13, 2023, Lewis "scolded" Mays to "stay germane" (ECF No. 31, ¶ 153); issued a warning to Mays, an appeal of which was unsuccessful (*Id*. at ¶¶ 156-158); after Mays questioned why Councilman Murphy was not warned, Lewis issued Mays a second warning which Mays appealed (*Id*. at ¶¶ 163-165); after further comments by Mays, Lewis removed him "for being disorderly" (*Id*. at ¶ 172); and asked Flint Police Officer Metcalfe to remove Mays (*Id*. at ¶ 177).  Mays left "without incident" (*Id*. at ¶¶ 178, 251; ECF No. 37-5, Exhibit 1D at 01:13-05:15; 13:00-17:25).

A special Council Meeting was called for December 5, 2023, to consider a resolution to suspend Councilman Mays.  (ECF No. 31, ¶ 180).  The meeting was adjourned for lack of a quorum.  (*Id*. at ¶ 183).  On December 20, 2023, the Council passed Resolution 230448.1 (the "Resolution,") (ECF No. 37-11; ECF No. 31-1) suspending Mays for three months because:

> Councilmember Mays has persistently used racist rhetoric and has used constant frivolous motions to impede the business of the Council. On multiple occasions, Councilmembers (sic) Mays has also used aggressive, profane language towards other members of the City Council and has mocked and belittled individuals with medical conditions and disabilities. Councilmember Mays continued to refer to other members of the City Council as "handkerchief head negroes."

For those reasons, he was suspended "from taking his seat or participating, in any meeting of the City Council or its committees, in his official capacity as a City Councilmember." *Id*. Mays died February 24, 2024. (ECF No. 34-1, Suggestion of Death). Eric Hakeem Deontaye Mays, as personal representative of Eric B. Mays, substituted in as Plaintiff on May 29, 2024. (ECF No. 43).

### III. ANALYSIS

#### A. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545

6

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

    A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face."  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678.  However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable …"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

B.  <u>First Amendment Retaliation</u>

Mays and Defendants do not appear to agree on the standards applicable to Mays' retaliation claim. Mays points to the general three-part inquiry for such a claim, where generally, to have plausibly pleaded a First Amendment retaliation claim against a defendant, the complaint must contain facts showing: "(1) that

8

[plaintiff] engaged in First Amendment protected activity; (2) that [the defendant] undertook 'an adverse action' that would deter 'a person of ordinary firmness from continuing to engage in that conduct'; and (3) that there is a 'causal connection' between [the plaintiff's] protected activity and [the defendant's] adverse action." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Defendants maintain that Mays must additionally satisfy the *Pickering*[3] test, which it says applies to the actions of a legislator in a legislative session only if:

> 1) the employee expressed himself as a "citizen" and not as a public employee; 2) the employee expressed himself on a "matter of public concern"; and 3) the expressive interests of the employee outweigh the employer's interest in efficient operations.

(ECF No. 37, PageID.601, citing 5 Antieau on Local Government Law, Second Edition § 76B.02 (2013) (citing *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386 (2011)); *see also Aquilina v. Wrigglesworth*, 298 F. Supp. 3d 1110, 1115 (W.D. Mich.) ("[t]he same basic analysis" applies to a suit between elected officials as to a suit by a public employee.).

---

[3] *Pickering v. Board of Education*, 391 U.S. 563 (1968). At oral argument, Defendants' counsel indicated that *Pickering* would not apply to the speech of elected officials, which is at odds with the arguments made in the brief.

The Sixth Circuit has not decided whether the *Pickering* test applies to the speech of legislators. As explained in *Zerla v. Stark County, Ill.*, there is tension between the *Pickering* test for public employees and the Supreme Court's decision in *Bond v. Floyd*, 385 U.S. 116 (1966), holding that legislators speaking on public policy issues are entitled to First Amendment rights to participate in legislative functions. 2019 WL 3400622, at *3 (C.D. Ill. July 29, 2019). *Zerla* further explained that different courts have reached different conclusions about whether *Pickering* applies to speech restrictions on elected officials. *Id.* (citing *Werkheiser v. Pocono Township*, 780 F.3d 172, 180 (3d Cir. 2015) (identifying intra-circuit tension in the 5th Circuit, noting a dicta rejection of the *Bond* exception to *Pickering/Garcetti*[4] in the 8th Circuit, and surveying district courts that have fallen on either side of the issue); *see also Hogan v. Township of Haddon*, 2006 WL 3490353, *6–7 (D.N.J. 2006), aff'd, 278 F. App'x 98 (3d Cir. 2008) (District Court, applying *Garcetti v. Ceballos*, 547 U.S. 410 (2006), held that an elected official received no First Amendment protection when she spoke as part of her official employment duties.); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of*

---

[4] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.") (citing *Pickering v. Board of Edu. of Township H.S. Dist. 205*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)).

*Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000) (the *Pickering* line of cases does not apply to the speech of elected public officials). The *Zerla* court also observed that the Seventh Circuit appears to agree that elected legislative actors are subject to different First Amendment analyses than "public employees" writ large, and also agrees that any government restriction of public employees' speech must be related to the government's "duty to promote the efficiency of the public services it performs." *Siefert v. Alexander*, 608 F.3d 974, 984–85 (7th Cir. 2010).

In the court's view, the speech of a legislator does not neatly fit within the *Pickering* dichotomy: it is neither the speech of a private citizen nor does it fall within the category of "government speech," where public employees speak as agents of public employers, and as such, the employers may discipline the employees for saying something unacceptable. *DeCrane v. Eckart*, 12 F.4th 586, 595 (6th Cir. 2021) (citing *Garcetti*, 547 U.S. at 421–22). Mays' proposed TAC makes clear that that speech he claims is protected is speech made in his capacity as a Flint City Council member, not a private citizen. *See e.g.*, ECF No. 31, ¶ 18 ("On October 23, 2023, Plaintiff, ERIC B. MAYS … was present at the Flint City Council meeting occurring that evening, performing the functions he was duly-elected to perform as the Flint City Councilman representing the 1st Ward of the City."). Yet, Mays' speech as a legislator also does not neatly fall within the category of "government speech" on the other side of the *Pickering* dichotomy.

11

Because *Pickering/Garcetti* does not appear to apply, the question is whether Mays' speech as identified in the TAC is protected under *Bond*, which applies only to statements regarding public policy. Fundamental to a First Amendment retaliation claim is the existence of protected conduct. None exists here because the statements identified in the TAC do not relate to substantive public policy matters and thus, are not protected speech. Instead, the TAC identifies a multitude of procedural matters, such as raising "points of order," "points of information" and appeals of procedural decisions of the chairperson. (ECF No. 31, ¶¶ 24 (point of order), 25 (appeal of decision denying point of order), 39 (point of clarification), 40 (point of order), 41 (point of information), 44 (appeal of warning), 45 (point of order), 57 (point of order), 58 (appeal of point of order, 62 (point of order), 64 (point of order), 65 (appeal), 71 (calling a Special City Council Meeting), 75 (point of order), 77 (objection to recess), 79 (pointing out lack of quorum), 85 (assertion of unlawful recess), 88 (appeal regarding recess), 92 and 93 (support of appeal), 103 (point of information), 105 (appeal), 110 (point of order), 111 (appeal), 113 (point of order), 114 (appeal), 120 (request for clarification), 122 (appeal), 126 (appeal), 132 (appeal), 135 (point of order), 139 (appeal), 157 (appeal), 164 (point of order), 165 (appeal), 171 (point of order), 175 (appeal) and 177 (point of order)). Mays' First Amendment claim fails because he has not identified any protected conduct in the TAC. Indeed, Mays

conceded at the hearing that the TAC fails to identify *any* protected speech. Accordingly, his First Amendment retaliation claim found in Count I of the TAC must fail as a matter of law.[5]

### C. Due Process

Defendants argue that Mays fails to cite any law or authority establishing a liberty or property interest in his City Council seat. And indeed, Mays has no such interest, as the Sixth Circuit recently held in *Fouts v. Warren City Council*, 97 F.4th 459, 469 (6th Cir. 2024). There, the Sixth Circuit held that regardless of whether the plaintiff was pursuing a procedural or substantive due process challenge, he must show a deprivation of a property or liberty interest by government action. *Id*. (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). However, longstanding Michigan and federal law confirm that there is no property interest in holding public office. *Id*. (citing *Taylor v. Beckham*, 178 U.S.

---

[5] Even cases where First Amendment violations were found because the plaintiffs were prevented from carrying out their elected duties, those plaintiffs were required to identify protected conduct in the form of speech on public policy issues. *See e.g.*, *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3rd Cir. 2006) (the Third Circuit held a city council member presented a jury question on a claim of violation of free speech where the council member was ejected from a council meeting for speaking out against the proposed city budget and deprived of his opportunity to vote on the budget.); *Velez v. Levy,* 401 F.3d 75, 98 (2d Cir. 2005) (the Court considered the First Amendment retaliation claim of a New York City community school board member. Velez alleged that, in retaliation for the positions she took as a board member, she was removed from her elected position on the school board**.** The Second Circuit held that the First Amendment bars state officials from stripping elected representatives of their office based on the political views of such representatives.).

13

548, 576 (1900) ("The view that public office is not property has been generally entertained in this country."); *People v. Smith*, 502 Mich. 624 (2018) ("[T]he law has long been clear that there is no property interest in holding public office.").

Mays, acknowledging that he has no such interest in public office, suggests that the lack of a liberty or property interest is immaterial, because he seeks damages for mental pain, anguish, and humiliation, which is permissible for due process and other constitutional violations under § 1983, citing *Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997) (allowing recovery for emotional distress after an unlawful search); *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994) (fireman who was forced to retire in violation of his first amendment rights could recover, in part, for mental anguish, humiliation, and loss of reputation). Yet, Mays cannot claim damages for a constitutional violation that does not exist. Accordingly, this argument does not save his due process claim and the motion to dismiss Count II of the TAC must be granted.

    D.    <u>Equal Protection</u>

At the hearing, Mays indicated that the Equal Protection claim is withdrawn. Accordingly, the court grants Defendants' motion to dismiss Count III.

    E.    <u>Fourth Amendment</u>

In the response, Mays indicates that this claim has been withdrawn. Accordingly, the motion to dismiss Count IV is granted.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss the Third-Amended Complaint, with prejudice.  This is a final order and closes the case.

**SO ORDERED**.

Date: October 29, 2024                                         s/F. Kay Behm
                                                                               F. Kay Behm
                                                                               United States District Judge

15